Good afternoon. May it please the court. Your Honor, the issue in this case is whether a secure courthouse holding facility wherein some 600 detainees are confined for up to 12 hours a day on a daily basis while they await their court appearance constitutes an institution within the meaning of RLUIPA. There are three reasons why that is the case. First, with respect to the plain meaning of the text, what is called for here is a straightforward statutory construction. As your Honors are aware, RLUIPA covers all persons, all persons who are residing or who are confined in an institution as defined in 42 U.S.C. sections 1997 as seeked. RLUIPA specifically defines an institution as a pretrial facility. That's at 1997 1B3. And the Orange County facility comfortably falls within the ordinary common sense meaning of a pretrial detention facility. What about jail? There are other, jail, prison, it doesn't have to be limited to that particular term, does it? No, you're correct, Judge O'Scanlan. There are two locations for where the definition can come from. The PLRA, which I believe your Honor is referring to, refers to a jail, a prison, or an institution. However, the PLRA, nowhere, I'm sorry, jail, prison, or as you said, other correctional facilities, there's no mention in the PLRA of an institution. And therefore, the reference in RLUIPA to 1997 most comfortably fits within CRIPA itself where an institution is described as either a jail or a pretrial facility. There are a number of other possibilities within CRIPA, but those are the two that are most pertinent today. Well, CRIPA is incorporated by reference as I understand it, but PLRA is not in this statute. That is exactly right for purposes of this definition. Your Honor, I want to talk to the court about two ways just within the statutory construction. As Chief Judge Kaczynski pointed out in the dissent in the panel decision, this case is really determined on the specific record itself as Orange County defines the institution. At page 95 of the record, the Orange County grand jury defined the five types of jail facilities that are within its system. And what is especially interesting about that description is that pretrial detention facility is nowhere specifically mentioned. So it's our job to find which of those institutions best fits the definition that CRIPA is contemplating. And at page 95, the very facility we're talking about is defined as a secure detention facility located within a court facility used for the confinement of persons solely for the purpose of a court appearance for a period not exceeding 12 hours. That's the definition of a pretrial detention facility. And if we go even past that and look at what this court has told us in terms of how to define it, for example, the Cleveland case at page 989, just the most basic definition, page 616 of Webster's, tells us that a pretrial detention facility is a facility for the temporary custody prior to disposition of court. Black's tells us at page 514 that a pretrial detention facility is for purposes of holding a defendant before trial under criminal charges. That's precisely what we're dealing with here, and that's precisely the definition that is utilized at page 95 of the record. Indeed, Mr. Lawrence, in the course of the panel argument, said, conceded, yes, there are pretrial detainees who are maintained within this particular facility. Indeed, that is the principal purpose of the facility itself. Judge Carter seemed to be concerned, and a panel of the majority was concerned, about the highly transitory nature and somewhat apparently chaotic circumstances in this holding cell. How are those concerns addressed, and how is the kind of utilization of this holding cell consistent with what Congress was trying to accomplish in Relupa? I want to answer that in three ways, Judge Fischer. First, I think just the plain, ordinary definition and the description of the facility that's within the record that the grand jury indicated falls within precisely what Congress means. The fact that it is chaotic, quite frankly, is not a surprise in that it is a pretrial detention facility where individuals are waiting, where people are going to move out, where they're going to come in. That is totally consistent with what a detention facility, any pretrial detention facility, would in fact accommodate individuals. The test that CRIPA sets up within the meaning of Relupa is a terribly functional description, a functional definition that says, how is this used? What cannot be controverted here is that the principal purpose is to hold for a relatively limited period of time, but up to 12 hours, detainees just before they go to court or after they come from court. That's a pretrial detention facility. But Relupa imposes, and this is what Judge Carter's and I think the majority's concern was, has such a restrictive standard on what has to be established by the jailer in order to justify what they view as a serious safety... I take that point, Your Honor, and I agree that a significant part of Judge Carter's decision, and quite frankly, as I heard the argument of the panel, dealt with the question that you're raising. That's the second part of the test. I understand. That's the second prong. And if, in fact, the county can demonstrate, completely inconsistent with the Bureau of Prisons regulations on this matter, but if the county can demonstrate that, in fact, it is too chaotic, the security pressures are too severe, then it fails. But the importance of this case is that we are dealing in the first instance with whether or not this is covered itself. What I'm trying to drive at is, is there any way to justify the resolution of the district court and the majority on the panel as saying, if we try and push a holding cell into this definition, then we create tremendous pressure on the standard, the second part of the test, to try and deal with a variety of circumstances where someone coming in with a headscarf that can be used to commit suicide or to strangle somebody, you have to really distort the second part of the standard in order to deal with the problem in the first place. I wouldn't think so, Your Honor, because in the case law from courts across the country on this issue, those two prongs are dealt with separately. In fact, it would cut the other direction. If our concern was with the second part, then we would be cheating with respect to the first prong and deny what really everyone knows is taking place here. And that is, if you are a pretrial detainee and you are going to this courthouse, this is where you are detained. This is where you are staying. This is the principal facility, and those are two very different tests. Now, I want to say this in concluding, Judge Fischer, as to that point. I don't think it's going to be as chaotic in terms of the security risks that take place. I don't think it is going to be as chaotic as was indicated. But that waits another day. We haven't had an opportunity to present our evidence with respect to that. We're perfectly prepared to deal with that at the time. Judge, could I just finish one point, and then I'd be glad to get to your point. I do want to state two other points very quickly to you, Judge Fischer, and that is this. The legislative record, to the extent the legislative history is to be considered here, all goes in precisely the direction that we're talking about. At page 10 of the House report, a pretrial detention facility is defined as a generic term. A generic term to cover any institution or facility which confines detainees who are awaiting or participating in criminal trials. That contemplates the discussion that we're having and saves for another day the question of the precise security concerns in what is defined as a generic term in any institution. And finally, Your Honor, if there were to be any doubt, Section 3G of RLUPA says that when we look at these questions, we look at it consistent with the standards. It doesn't just say what is the plain spoken statutory construction on which I think we went in the first place, but says that that statute shall be construed to give a broad protection, a broad protection to the maximum extent possible. I think that all that indicates that we look at this in terms of the functional sense. Judge Smith, I'm sorry, I delayed answering you. Oh, I was going to ask, is this a fact-specific interpretation of the statute? In other words, is this fact-specific as to the person involved, or is this fact-specific as to the institution? That's a terrific question, Your Honor. The analysis in terms of the statute itself and the cases that have looked in this matter have said, what is the function of the facility itself? I can see that not every individual who happens to be in this particular pretrial detention facility might not necessarily fit a garden variety description of a pretrial detainee. But the point is that what this statute looks at is how does the facility function? What is it used for? Can we say it is a pretrial detention facility? What if it's used for pretrial detention and also it's used for a courthouse holding cell? Nothing to do with pretrial. Then if the statute, if the facility itself has no use whatsoever? No, I didn't say that. I said what if the fact-specific situation is that it's only a courthouse holding cell but has nothing to do with being a pretrial detention center? No, Your Honor, I think in the context that the court is describing here, it would still fall as a pretrial detention facility. And the reason is this, because what this statute is concerned about is protecting the exercise of this religious protection. I understand that. And in this instance, Judge Smith, there is no question that the purpose and the use of the facility itself is a pretrial detention facility in this particular case. So if it's used as a pretrial detention facility in any way, including other particular functions as well as pretrial, then would RLUIPA apply? Your Honor, if we pick some extreme hypothetical where there were 600 detainees and 599 of them were sightseeing, I have no idea what they'd be doing there. And one was a pretrial detainee would be a much tougher question. But where this is utilized predominantly for purposes of pretrial detention and what actually happened in this situation was something of an aberration in her being sent down there, where it is clearly a pretrial detention facility in its principle and predominant purpose. I don't think that's a hard question. In fact, in this particular situation, there is no other facility in the Orange County system that is functioning in this way. If you are going to appear in court in this courthouse, this is your pretrial detention facility. Yes, that's my problem. My understanding is that the people who are in there are expected to be tried that day. They're there because that day they're expected to be in the courtroom for trial or some other proceeding. They are there pretrial prior to that trial. Well, it's that day. And so I think that is different, is it not, from people who are in a separate facility awaiting the day of their trial, which is also pretrial. First of all, Judge Schroeder, I honestly don't know if it's just a one-day hearing. I don't know that. It's not in the record. If you're asking me in terms of that day, that's where they are, then I believe it fits comfortably within the RLUIPA definition. They are a detainee. They are there prior to their trial, prior to their appearance. Was your client? My client was not in this particular... She was not Judge Clifton, but there is... But the RLUIPA could have been written, and this court has said in the Isinger case, it has said in the Lenner case, it has said in any number of cases that we look at the statute for the meaning of the words themselves. And just as we don't say that there could be surplusage, at the same point we also recognize that the words have meaning. RLUIPA could have been written to talk about the character of the individual, what the individual is doing there, how many days the individual is supposed to be there. That's not the way this particular statute was drafted. Is there any temporal requirement or any temporal limitation built into the statute? None whatsoever, Your Honor. So in other words, someone could be in more than one pretrial facility, for example, awaiting trial. They may be in one where they spend the night, and they may be in another where they spend the day. Would that be correct? I think that's exactly right, Your Honor. That would be within the contemplation of the statute. And just thinking about it reasonably, going back to the purpose here, the hijab that Ms. Katib was told to remove is, as I think everyone in this courtroom conceives, an extraordinarily important religious practice. Would this statute make sense if you were going from facility to facility, and that's what the law is about, and say in the jail you were permitted to wear it if the security conditions merited it, and then you go to another facility, and categorically, without even asking a question about the nature of the security interest, you'd have to take it off. Because the sign said, holding cell. And then you go to another facility, the last two, just as you said, Judge McHugh, looking at where you are detained prior to your trial, and the test switched. But the test could switch, not for the institution, because the institution falls within the definition. But would you agree that once you go to Part 2, which is the substantial burden and the government's compelling interest, that that might vary by the details of the different facilities or institutions? It will vary by the details. So it may even be possible that it would be permissible to wear this headscarf in the overnight facility, but that there may be compelling reasons in a pretrial holding facility that happens to be a short-term courthouse facility that would make it difficult to police. Would you agree with that? Exactly right, Your Honor. And my point in raising what I said, and I apologize if I weren't sufficiently clear, is that, yes, the statute contemplates precisely what you're saying, a sensitive analysis in terms of the capacity of the particular facility to deal with the issues in the context of the religious practice itself. So in this very case, the county might very well have a defense that given the nature of this particular facility, it was, from a security interest point of view, necessary that she take it off. Yes, that's what I was trying to say to Judge Fischer, that when we get to the second prong, they're free to come out with whatever evidence they've got, as Judge McHugh said, to say, well, this can't handle it. The security risks are far too high. My point was that in looking at the first prong, should it make a difference to what Congress was intending to protect, especially in light of the Smith case, which was the origins of the statute itself, especially in light of where the facility is functioning in the same way, both, in your hypothetical, two pretrial detention facilities, one in one location, where an individual might sleep, where they might reside, which is another part of the statute, another where they are confined. Indeed, if you think about it, if they were just interested in where you slept, then the work could find out not to have appeared in the statute itself. Mr. Rosenbaum? I'm sorry, Judge Robinson. Counsel, then, what's your response to Judge Trott's observation that it's not a pretrial facility  during proceedings rather than before the proceedings? What's your response to that observation? I think that that was an inaccurate description, Judge Robinson, because the individuals who are held in that facility, as 95 says, used for the confinement of persons solely for the purpose of a court appearance, they are held there until their case is called. They are held there. Her case had already been called by the time she was sent there. Her case was called already. I'm sorry, Judge. I don't mean to cut you off. I'm not saying that she was a particular pretrial detainee. I am saying that this is a pretrial detention facility and that most of those 600 individuals, the overwhelming number of those 600 individuals daily are waiting to be called for their appearance. Let me ask you about that. You say she was not. When she walked in, I think when they sent her back and then they called her back up again, she was waiting for that next court appearance. But I take your point, Chief Judge Kosinski. I didn't make a point. Okay. I didn't even ask a question. I'm sorry. You start me well short of either. I apologize. No, I'm just trying to understand. When you say pretrial and you seem to concede she was not pretrial at some point, are you reading trial to mean trial on the question of guilt? Or does trial include any kind of evidentiary hearing, such as sentencing hearing? I think in that context, the common ordinary meaning of trial would include not just a jury trial where an individual is found not guilty or guilty, but anything with... Proceeding. Proceeding. Okay. So let me ask you then just to follow up on Judge Rolison's question. So just to understand what your position is, I don't want to feed you, I mean, I don't want to suggest any answer, but did I understand you to say that it's pretrial if it's right before the first day of the trial, but it's not pretrial if it's before the second day of trial? I mean, let's say you have a six-day trial. Would there be there a pretrial detainee on day one but a mid-trial detainee on day two? No, Your Honor. When my son says to me, am I going to court today or are you going to be in trial, I don't say, well, I'm going to be in the 17th day of trial. I'm going to be... So your reading of the statute, and now I am going to suggest to you, is that any time either awaiting trial or awaiting any portion of a trial or any hearing that is like a trial would be a pretrial detention. I think it would all get... That would be your reading of the statute. It would be, Your Honor. And imagine I came up to take a plea, to offer a plea. That would be part of it, of the situation. Anything that is germane to that proceeding, that's what Webster says, that's what Black says, that was all within the context... In fact, it would be very awkward to try to come up with statutory language that encompassed all of those situations. I think it would be impossible to do that in any sensible way. Your Honor, I'd like to permit the United States to take its time and reserve the rest of my time for rebuttal. Unless the Court has any additional questions? Please. Thank you. May it please the Court, Mr. O'Connor Duden for the United States. I'd like to continue where Mr. Rosenbaum was speaking. I think the simple answer here is you look to the definition of pretrial detention facility. You ask whether or not this facility in the basement of the courthouse constitutes such a facility, and then you ask whether or not Mrs. Katib was confined or resided in that facility. And I think the answer clearly is yes. The athletes raised several different sort of objections to this reading of the statute. First, they say that the interaction between the PLRA and the NRLUPA would prohibit the broad reading that would allow this to be a pretrial detention facility. That fails to take into account the fact that there are already cases, prisoner cases, including NRLUPA cases, that are exempt from the exhaustion requirements that the PLRA has. Those requirements only apply to federal claims that are brought by prisoners who are incarcerated at the time they file their claims. Counsel, under CRIPA, the word jail is also used, and I noticed in Black's Law Dictionary, among other things, it says it's a place of confinement that is more than a police station lockup and less than a prison. Does that shed any light on this at all? I think it is. In our brief, we argue that this particular holding facility falls both within the plain definition of jail and the definition of pretrial detention facility. It would make sense that Congress would have overlap in its definitions because it's trying to get at facilities that are named different things that have various functions. For instance, one can imagine a county courthouse that has the county's jail, the county's district attorney, and also the judges all within the same building, and that jail would fall within this definition here under CRIPA. The common sense in some of those facilities, people say, as we did, I have to go see my client in a lockup, and that is actually somebody who's usually held in the basement of a courthouse pending some proceeding, is it not? Yes. Sometimes it's called a jail, and sometimes it's called something else. That's correct. Can you think of any facility in which any accused would be held or confined that would not fall within RLUPA? Well, I think actually at the oral argument panel stage, Chief Judge Kuznetski asked what would happen if someone was confined to the jury box. And I think that that's a tougher question. Let's say the person, instead of being walked back and put in the basement for the whole day, is put in the jury box. The jury box is not a facility that was created with the function of detaining people. Is it a facility, a jury box? Yes. Well, a facility is a pretty – I think that's defined in Webster's as something that is built, constructed, installed, or established to perform some particular function or to serve or to facilitate some particular end. So one would think that a jury box has been built to put the jury in, not – Exactly. Okay. And I think – so I think the – So the answer – the question is, is there an answer to my question? Can you think of something that is actually a facility for confinement that wouldn't fall within RLUPA? No. I think facility does the work here and is where the line is drawn under RLUPA. So is the jury box a – within the pretrial detention facility or not? The position of the United States would be that a jury box does not because it isn't created with the purpose of detaining people. Or a courtroom. Courtroom, too. I would concede that a courtroom is not – What about the pay wagon? That's a question that I've thought about and I think is very difficult. Obviously, you could argue that it's created to house people, but at the same time it's also its function is to transport people to either a jail or a police station or something like that. So I think that's a closer question in terms of the pay wagon. But they're held in the pay wagon until court convenes. That is a very difficult question. I think arguably it would fall under the definition of RLUPA because the facts on the ground would suggest that this is a facility that was created to detain people until – Mr. Duggan, do you agree with Mr. Rosenbaum that the county could have a defense here that under the circumstances of that particular facility there was a penological interest in removing the Fiji? Yes, but that's the second part of the question. No, I agree with you, Mr. Scanlon, but I think what we have here is a simple question of coverage and this particular facility falls within RLUPA's and CRIPA's definition of that. So does the primary purpose of any particular facility become a fact question? Is that something that would have to be inquired into to see whether it was a pretrial detention facility? I think it's a fact question, but it's also a definitional question. I think that it's sort of a combination of those two things. Here we have the grand jury report that makes it abundantly clear that this is a place that houses 600 people a day and has 20 deputy sheriffs who are guarding it. So it is a fact question to get to what is the function of this place, but at the same time the definition can help to eliminate that. And as I understand it, you're agreeing with counsel that it is a fact question in determining the institution rather than a fact question in determining why the detention of a particular individual? That's right, Judge Smith, and RLUPA says persons who are residing in or confined to a particular institution. It doesn't sort of classify it by what the person is. Is the person a convicted felon? Is the person simply waiting trial? But it actually asks what is the institution at issue? Well, I guess that's the question. You were suggesting then that our total inquiry must be as to the institution itself and that if the institution is mere holding cell, not pretrial in any way, that it would then fit this definition? That it would fit it or wouldn't? Would. Are you suggesting it would fit the definition? If it were a mere holding cell? Yes. That wasn't filled with the intent of housing pretrial detainees? I think it would fall under the definition of jail, which is part of the definition of institution under CRIPA. I'm not sure that it would fit under the pretrial detention facility argument. Okay, thank you. We'll hear from the county. Good afternoon. David Lawrence for County of Orange. Michael Corona and Deputy Cozart. I think the issue here is not so much about the word pretrial as it is about time. Most of the questions that I've heard today have focused on how much time is a person in a particular facility or place or location? I think we have to go back to CRIPA to really understand how we got where we are today. The definitions that we're talking about were promulgated in 1990 under CRIPA. Now the purpose of CRIPA was to authorize the Attorney General to bring suit on behalf of institutionalized persons. Not just prisoners, but mentally ill, any persons who were institutionalized. In doing so, it set forth a list of institutions that there was jurisdiction over. Council referred to pretrial detention facilities as generic. In my Rule 28J letter, I pointed out that there was a very important sentence in the legislative history of CRIPA that was left out. I will read the portion that Council was referring to and then the following portion. The third facility or institution covered is any which is a pretrial detention facility. This generic term is intended to cover any institution or facility which confines detainees who are awaiting or participating in criminal trials. State and local laws generally require the separation of convicted and not convicted persons. This institutional category will reach detention facilities for persons who have been convicted. Who have not been convicted. I'm sorry, not been convicted. So the point was, when those definitions were promulgated, the concern was that a court would find, well that's a pretrial detention facility, it's not a jail, it's not a correctional facility, it's not prison, and therefore it's not covered under CRIPA. So that definition was not created with RLUIPA in mind. Now RLUIPA was created with the notion that the right to exercise religion is important, that institutionalized persons are persons who are in circumstances where they can readily and consistently and constantly be deprived of their right to exercise their religion and therefore they are given the right to exercise their religion if they are institutionalized. Now, there was another definition read by counsel, and that had to do with the interpretation of RLUIPA. And again he left out a couple of words that I think were extremely important. I'm sorry, I didn't get the importance of the words he left out in the last one. I didn't quite get the point. If Your Honor will recall, during the last argument, there was a great deal of discussion about what would be a pretrial detention facility that was not court lock-up or jail or prison or other institution. And the fact of the matter is that many states require that pretrial detainees be kept separate from convicted prisoners. So there are circumstances where there are facilities that are pretrial detention facilities that are not jails, prisons or other correctional facilities. So that's where the definition of pretrial detention facility came from. That's why it was created. So that those persons would not fall through the cracks when CRIPA was passed. So in this context, RLUIPA incorporates the definition of facilities and institutions from CRIPA. And when it talks about pretrial detention facilities, I submit that it talks about the pretrial detention facilities that were considered when CRIPA was drafted. And those are the facilities in the states where pretrial detainees are kept in facilities separate from convicted inmates. Let me ask you some concrete questions about your facility. I don't think I asked the last time. What about kosher food? The prisoners are there all day. Do they get kosher food? Are you talking about at the lock-up, at the jail? Yes, at this facility. Yours is a jail. I'm sorry? Yours is a jail, the one you're talking about. I'm talking about the one in this case where she was confined. The one in this case would depend on whether or not it's considered a pretrial detention facility. I don't see your position. Would they get kosher food? Do they get that? I guess that's outside the record. I was really asking your position whether you think it's required that they be provided kosher food. I don't think they're required because it's our position that the lock-up... They don't eat the time they are there. When they're participating in trial, they just don't eat. They can't bring their own food from home, so they just don't eat if they are required to have kosher food. They're there for less than 12 hours, and that may be a possibility. If those religious convictions are that strong... I don't think you go 12 hours in trial without food, do you? I'm sorry? I don't think you go for 12 hours during trial without food. Not frequently, but I can tell you there have been a number of times, particularly during trial, when I have. I'm not sure I understand your response. Are you saying that, yes, indeed, if requested, Ms. Khatib could have halal food, for example? I'm not saying that she wouldn't be provided with that. But what I am saying is that the court lock-up is not a pretrial detention facility. So that she wouldn't be entitled to it. Is that your point? That is my point. Whereas if we determine that it is a pretrial detention facility, and therefore under the law, then the county would be required to offer, for example, halal food to Muslims and kosher food to Orthodox Jews? No. Now you have to determine whether or not that's a substantial burden, and then whether or not the county has a compelling interest in not providing that, and whether that's the least restrictive alternative. But those are all under prong two of the test, correct? That's correct. And I think that's where the question about the chaos that would follow from broadening this first issue. The chaos isn't just violence that might take place in a courthouse lock-up. The chaos is determining, in each one of these circumstances, would be the litigation chaos that results from making these decisions as to what religious practices will be accommodated at the courthouse lock-up. Let me go back to the definition. In the record here we have the circumstance where you have the grand jury or these periodic reviews of the facilities. And the facility that we're talking about, I think, is defined as a secure detention facility within the court that's used solely, or confinement solely for purposes of court appearance. So my question to you is what is it about that description of this facility that in your view doesn't fit it within a pretrial detention facility? My answer to that is that the line has to be drawn somewhere. The dissent itself acknowledges that lock-up cells in the courthouse are not pretrial detention facilities. There's been argument or discussion about whether or not the jury box would be a pretrial detention facility. It's a courtroom or pretrial detention facility. Go back to the lock-up statement again. I didn't hear it at all. You're saying that it's a lock-up, a jail lock-up is not a jail? It's not a pretrial detention facility. Is it a jail? And the dissent acknowledges that. Is it a jail? It's a jail. Is a jail lock-up a jail? Well, the jail falls within the statute because it's one of the facilities. But if I understand the question, it is could this facility, and this is the question I originally asked Mr. Rosenbaum, could this facility be considered a jail to the extent that it is a detention facility for people that are in that courthouse? I don't believe it is a jail because it doesn't have the sorts of accommodations that are required to accommodate people over a significant period of time. And so that definition of jail comes from where? In other words, a jail must be a facility that accommodates people over a period of time. Where does that definition come from? I think that's just common parlance. I mean, if someone is placed in jail, obviously we have to provide them with the common necessities of life. But, you see, that's one of the difficulties of monikers and labels because in some counties and in some facilities, the jail is that place where people are held pretrial, which is similar to the lockup, what you call a lockup here. Some people in their county would call it jail. So I guess my question is when you get, we have to go somewhere for definitions and I'm not sure common sense obviously plays a role, but also dictionary definitions and usages such as your county uses for describing things. Would you agree that's where we would look for definitions? It's common sense. Well, no, would you agree that dictionary is a place to look for definition? I think you could find, I think you could support either side depending on which dictionary one picked up, whether it's Webster's or Wikipedia or... Or Blacks. What about the definition that the county itself uses that I started my questioning with? We certainly would use that as a basis for the definition, would we not, the way you describe? Yes. And that does not describe the lockup at the courthouse. Isn't the term secure detention facility, isn't that the county definition? With confinement? Secure detention facility is how the lockup at the courthouse is defined, yes. Okay. So in other words, because the word pre-trial is missing... I'm sorry. Because the word pre-trial is missing, that's the reason that that definition doesn't include a pre-trial facility? No. It's because it's a temporary transitional facility that accommodates a variety of detainees, not just pre-trial detainees, persons who have been convicted, persons who are pending post-trial motions, persons who are being sentenced, persons who are being brought in from over 20 police departments throughout the county, persons who are all lost of life or being brought into that courthouse every day. And so to call it a pre-trial detention facility is, I think, an overgeneralization. Why is it you're so concerned about trying to extricate this lockup from coverage? Why can't the issues that you're concerned about, the common sense issues, the high turnover, the variety of people and circumstances and degrees of violent behavior and so on, why can't and why doesn't Congress itself indicate that that's all resolved under the second prong? Frankly... We seem to be trying to get ourselves in a pretzel knot here to try and get into the first section so you don't have to trot out your legitimate concerns on the second prong. I would submit that this was not a consideration that Congress... Well, that Congress was clearly concerned about persons being deprived or having a substantial burden on their religious freedoms. You know, you've just said that Orthodox Jews could be put into a criminal process and deprived of food that they can eat for 12 hours. You're a lawyer operating on adrenaline. You know, a lot of us can do lots of things when we're in charge of things. But, you know, a prisoner who is dependent on his or her civil rights to say can be put into a holding cell at 8 o'clock in the morning and then have to appear before the court at 4 or 3.30 in the afternoon without nourishment, kosher nourishment, would seem to raise a question about what Congress had in mind. The same would be true, I submit, in the circumstance of this case where a woman who having to just remove her headscarf is a complete violation of her religious beliefs, doesn't require any time other than the exposure that occurs instantaneously when the headscarf is removed. Why wouldn't that fall within the concern of Congress? I understand your concerns, but the fact is that when you have a temporary facility like this, it's not like running a jail where you can have a set of policies and these issues come up all the time and you know how to deal with them. You have people coming in off the street. Like in this case, this person came in to the courtroom. Excuse me, sir, you're not answering my question. You're telling me why the county would defend the case. My question was why wouldn't that be the concern of Congress? I understand that you have concerns and explanations as to why it would be problematical, but didn't Congress provide for that in the second prong? I think Congress was concerned about allowing a broad exercise of religious rights. I agree with that. Frankly, I don't think Congress took those examples into consideration and frankly, I don't think it would be workable to do so under these circumstances. Why didn't it just leave the jail, prison, and other correctional facility? If it didn't have a special concern for people who are involved in the trial process and the process of having their case adjudicated in court, why wouldn't they have just left it with jail, prison, and other correctional facilities? I think for the same reason as I read from the legislative history from CRIPA, which is the concern that pretrial detention facilities, which are often a facility separate from the jail, where pretrial detainees are kept apart from convicted prisoners, would fall through the cracks. In fact, that statute, 1997A, affords greater rights to pretrial detainees than it does to convicted prisoners. In other words, when the Attorney General institutes a lawsuit, as far as convicted prisoners are concerned, he can proceed under the immunities and the Constitution, but not the laws of the United States. Whereas a pretrial detainee can proceed under the laws of the United States. So what you have is then import the purpose of CRIPA into RLUPA, even though Congress didn't do that directly and only incorporated the definition? No, what I was responding to was the question is, why didn't Congress just use the PLRA definition, but use the CRIPA definition instead? And I think it was the same concern as when CRIPA was promulgated, which is the concern that some jurisdictions have pretrial detention facilities, and by that I mean places where non-convicted prisoners are kept separate from convicted prisoners. Is there actually a definition in the PLRA for institution? A pretrial detention facility? No, for institution. Institution? I don't know of. Okay, so then it would be difficult if you were writing the statute to say, look to the PLRA, because you would go there and you wouldn't find anything. In other words, you said, why didn't they use PLRA? If they wanted to do that, they should have done that and not CRIPA. But my question is, but if there's no actual definition on institution in PLRA, it would be hard to go there, unless I'm missing something. I may have misspoken. Okay. Well, the PLRA definition of prison, if I read it correctly, 3626A or G5, the term prison means any federal, state, or local facility that incarcerates or detains juveniles or adults accused of, convicted of, sentenced for, or adjudicated delinquent for violations of criminal law. That's CRIPA. That's the term? That is CRIPA. That is CRIPA. The PLRA, which is 1997E, says, no action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law by a prisoner confined in any jail, prison, or other correctional facility. So I think the question was, why wasn't that definition used for RLUCA instead of the CRIPA definition? Unless I misunderstood the question. Okay. I guess my worry, and maybe it's because I was a county judge and I saw people come into my courtroom and they were held in this what we called a county detention facility before they came to see me. And so while I think it's pretty, well, you've got a total different situation than I did. I looked at jail, prison, or other correctional facility and looked at pretrial detention facility, which is defined as institution, and I didn't find those exactly defined, and so therefore it seems under normal statutory construction that I would then go to the dictionary. So I go to the dictionary. But there is one thing that they do tell me in this law, and that is that the chapter shall be construed in favor of a broad protection. Broad protection of religious exercise to the maximum extent permitted. So it seems to me under statutory construction that when someone doesn't tell me exactly what the term prison, jail, or pre-detention facility means, and then the statute says given its broadest view, given that I wanted to have religious exercise, that this then applies to Idaho facilities as well as yours. Respond to that, please. I understand your argument, and my response is that the portion that Your Honor just cited says the chapter shall be construed in favor of a broad protection of religious exercise. Now when counsel referred to it, he left out religious exercise. He said a broad protection to the maximum extent permitted by the terms of the chapter and of the Constitution. Right. I think what they were talking about was a broad protection of religious exercise. That was my point. You're taking away the protections for kosher meals and hajibs because you aren't construing coverage broadly. I think if the facility is a pre-trial detention facility,  then it is to be construed to the broadest extent allowed by the Constitution. I agree with that. But not in response to Judge Smith's question, which is you shouldn't construe broadly what is an institution in the first place. That's correct. Where do you get that distinction? I get that distinction from the legislative history of CRIPA, from the definition set forth in CRIPA. Specifically what in those things? I'll tell you that. I mean, Judge Smith was asking you about construction of the statute, and it seems to say, as he suggested, that it should be construed broadly in favor of religious exercise. Now both terms are in the statute. Why would one apply a broad definition to some term in the statute but not to the term facility? Well, the chapter is Chapter 21, and Chapter 21 goes all the way back to Section 1981. I mean, so I think what I view it as the broad construction is relating to the exercise. And there were a loop of cases that have come before this Court. None of them have dealt with what is a pre-trial detention facility or what type of facility fits within the statute. Well, but doesn't the statute say, and I guess, again, construed in favor of broad protection, which would suggest to me that I should take these words and give them the broadest term possible such that I would give the protection broadly. I can construe the terms narrowly and therefore not give a very broad protection or I can construe the dictionary definitions broadly or widely and give a more broad protection. And I'm to construe them in favor of a broad protection. So it would seem to me that even though I might make my little Idaho jail in Millad something different than what it is, or we can call it a holding facility, if I'm to construe it in a broad way, if I'm to construe the language of what it is, the definition, so that I can give protection for religious exercise as best I possibly can, then I'm having trouble, again, with your argument. I still think the line needs to be drawn somewhere, which is where all of the questions about the jury box, the courthouse lock-up cell, the bus that brings the inmates to the jail. Well, I'll be fair. It doesn't seem to me too hard to make a distinction between the bus and the jury box and an institution which holds the prisoners in every event. They're not for any other purpose but to hold. Okay. Then I guess it becomes a question of time and how long that person is confined to that facility. So do you disagree with opposing counsel's definition that you look at what the primary purpose was of the facility? If the primary purpose is detention, then it would fit that definition? I think you look at the primary purpose of the facility, yes. But your position is that the primary purpose of the facility in this case was not for detention of individuals pending trial or a court proceeding? I think it's a superior environment where inmates are kept before they come before the court, and they come before the court in the Superior Court of Orange County for a variety of reasons. And trial is one of those, but there's no indication that it's the majority of them. I mean, there are a variety of reasons why inmates are brought to that facility and brought before the court. So you're saying you're focusing on the word trial, and you're saying there has to be an actual trial that they're being held for. Is that correct? I go back to CRIPA, which pointed out that pretrial detainees are presumed innocent, and many institutions require that they be kept in a facility separate and apart from convicted prisoners for their own safety and because of presumption of innocence. So are you saying that, in your view, the definition refers to a facility that's detaining individuals who are presumed innocent pending an actual court trial on their case? Yes. Exactly. Well, I take it, though, if the institution included the definition of the lockup, that you would then have an argument that the nature under Part 2, that the nature of this lockup is such with a fluid population, that there's a high security risk, and that a no-head-anything would be potentially justifiable, whether it's a nun or a hajib or any other kind of head covering. That would then go to a security claim that you would be able to make, correct? That goes to the other, if there's a substantial burden and whether there's a compelling interest and whether it's the least restrictive alternative. Right. And I agree with counsel. Those are all issues that are down the line. Those are down the line. I mean, the first issues are, is it a facility that's covered? Correct. And is there a substantial burden? In terms of all your description, but this is different because people come in, people come out, doesn't that really go to Part 2 rather than the description of the facility? Doesn't it go to Part 2 to say, because of that nature, that also is the type of facility where you might have security concerns that you would be able to articulate in Phase 2? I would acknowledge that if the court finds that the facility we're talking about here is a pretrial detention facility, then the next step, well, I think the next step, is there a substantial burden? Correct. And then the next step, if a plaintiff can clear that step, is whether or not there's a compelling interest and whether it's the least restrictive alternative. Let me follow up on a conversation here with Judge Ikuda. I just want to make sure I understand the answer that you gave to one of her questions. You said prisoners come there for all sorts of reasons, but I take it, or at least my understanding is that all those reasons have to do with appearing in court. Yes. No one is brought there to take them to the hospital or dentist or something like that. That's correct. They are there for some sort of court appearance. Correct. Either awaiting the beginning of trial, awaiting arraignment, awaiting there during trial recess, awaiting sentencing, something of that sort, right? Correct. Okay. There's a variety. I don't think we can cover all of them here today. No. Those kind of facilities you were talking about where they say prisoners, in states where they say people are not convicted has to be kept safe from convicted prisoners, what happens once they get convicted? And then they have to wait sentencing. Do they then take them somewhere else? They're transferred to a jail where convicted prisoners are located. Even before sentencing? It depends. I'm sure it depends on the jurisdiction. I submitted several cases in my 28-J letter. One of them was Massachusetts, which is the state where Senator Kennedy was a senator, who was one of the sponsors of Lula, and that was a state that required the separation of pretrial detainees from convicted prisoners. I think that's significant. Okay. Time's up. Thank you. Thank you very much. Mr. Rosenbaum, I think the United States ate up most of your time, but I'll give you a minute for rebuttal if you wish to take it. Thank you, Your Honor. I just have a few very brief clarifications. The question you asked, Justice Gannon, the PLRA does not specifically use the word institution. But there is a definition of prison. There is. That's correct. The one that I read. That is exactly right. But in terms of looking for where you'd find the word, the word is incorrect. I understand. I think the level of the Court's questions have indicated a sensitivity in terms of how this particular facility or facilities that come within the ambit of RLUPA ought to be construed. But I do want to say that even within the Orange County grand jury analysis of the detention facilities found within that county, there is a distinction between lock-up and court-holding facility, the one we're talking about. So even the grand jury doesn't characterize this particular facility as a lock-up. Rather, that is a separate facility within the meaning of the way the Orange County grand jury looked at the network. Thank you. Okay. Thank you very much, Your Honor. Thank you. Okay. So I will stand submitted. We are adjourned. This session stands adjourned.
judges: Ozinski, Schroeder, Pregerson, Reinhardt, Rymer, Silverman, Graber, McKeown, Wardlaw, Rawlinson, Bybee, Cjj